A Biopure-requested meeting has been
scheduled with the FDA on January 6, 2004,
to discuss the BLA. If there are significant
developments at or following this meeting,
the company intends to report them promptly.
Biopure still expects to respond to the
questions in the FDA's complete response
letter by June 30, 2004.

38.  Market reaction to defendants' belated
disclosures was swift and severe. On December 26, 2003, the
first day of trading following Biopure's announcements, the
price of Biopure common shares fell over 16% in value to
close at $2.43 per share on trading volume of over 3
million shares.

### Undisclosed Adverse Information

39.  The market for Biopure's securities was
open, well-developed, and efficient at all relevant times.
As a result of these materially false and misleading
statements and failures to disclose, Biopure's common stock
traded at artificially inflated prices during the Class
Period. Plaintiffs and other members of the Class purchased
or otherwise acquired Biopure securities relying upon the
integrity of the market price of Biopure's securities and
market information relating to Biopure, and have been
damaged thereby.

40.  During the Class Period, defendants

materially misled the investing public, thereby inflating the price of Biopure's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants1 statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

(a)   that Biopure had been notified by the FDA, as early as March/April 2003 that the Company's clinical trials of Hemopure for trauma applications had been put on hold due to "safety concerns" arising from adverse clinical data reviewed by the FDA in connection with the Company's BLA for Hemopure orthopedic applications;

(b)   that FDA approval of Biopure's BLA for commercial marketing of Hemopure in the United States was in serious doubt, and in any event could not have occurred sooner than late 2004; and

(c)   based on the foregoing, defendants' opinions, projections and forecasts concerning the Company and its operations were lacking in a reasonable basis at

all times.

41.   At all relevant times, the material
misrepresentations and omissions particularized in this
Complaint directly or proximately caused or were a
substantial contributing cause of the damages sustained by
plaintiffs and other members of the Class. As described
herein, during the Class Period, defendants made or caused
to be made a series of materially false or misleading
statements about Biopure's business, prospects and
operations. These material misstatements and omissions had
the cause and effect of creating in the market an
unrealistically positive assessment of Biopure and its
business, prospects and operations, thus causing the
Company's securities to be overvalued and artificially
inflated at all relevant times. Defendants' materially
false and misleading statements during the Class Period
resulted in plaintiffs and other members of the Class
purchasing the Company's securities at artificially
inflated prices, thus causing the damages complained of
herein.

## Scienter Allegations

42.   As alleged herein, defendants acted with
scienter in that defendants knew that the public documents

- 23 -

and statements issued or disseminated in the name of the
Company were materially false and misleading; knew that
such statements or documents would be issued or
disseminated to the investing public; and knowingly and
substantially participated or acquiesced in the issuance or
dissemination of such statements or documents as primary
violations of the federal securities laws. As set forth
elsewhere herein in detail, defendants, by virtue of their
receipt of information reflecting the true facts regarding
Biopure, their control over, and/or receipt and/or
modification of Biopure's allegedly materially misleading
misstatements and/or their associations with the Company
which made them privy to confidential proprietary
information concerning Biopure, participated in the
fraudulent scheme alleged herein.

        43.   While defendants were issuing false and
misleading statements about Biopure and its business, the
Company completed two offerings of its common shares
generating over $30.6 million in proceeds. In addition, the
Individual Defendants, together with other high-level
Biopure insiders, directly or indirectly, disposed of over
$1.6 million worth of personally-held stock, benefiting
from the artificial inflation in Biopure's stock price

their fraudulent scheme had created. The Individual
Defendants sold shares during the Class Period as follows:

| NAME | DATE | Number of Shares | Price Per Share | Total Value |
|------|------|------------------|-----------------|-------------|
| Carl W. Rausch, CTO | 4/15/03 | 30,000 | $3.13 | $93,900 |
| | 6/5/03 | 2,000 | $6.06-$6.07 | $12,000 |
| | 6/24/03 | 3,000 | $5.58-$5.698 | $17,000 |
| | 6/25/03 | 2,700 | $5.80-$5.97 | $16,000 |
| | 6/26/03 | 34,374 | $5.80-$5.90 | $201,000 |
| | 6/27/03 | 20,000 | $5.95-$6.00 | $120,000 |
| | 6/30/03 | 5,000 | $6.14-$6.16 | $31,000 |
| | 8/5/03 | 10,000 | $7.50-$7.53 | $75,000 |
| | 8/6/03 | 2,000 | $7.50-$7.54 | $15,00 |
| | 8/7/03 | 8,000 | $7.00 | $56,000 |
| | 8/8/03 | 10,000 | $7.05-$7.28 | $72,000 |
| | 8/12/03 | 10,000 | $7.00-$7.15 | $71,000 |
| | 8/13/03 | 9,500 | $7.02-$7.15 | $67,000 |
| | 8/28/03 | 100,000 | $7.50 | $750,000 |

TOTAL PROCEEDS FOR RAUSCH:                              $1,596,900

| | | | | |
|------|------|------|------|------|
| Thomas A. Moore, CEO | 8/7/03 | 8,750 | $2.42 | $21,175 |

TOTAL PROCEEDS FOR MOORE:                                $21,175

TOTAL INSIDER PROCEEDS:                               $1,618,075

*Applicability Of Presumption Of Reliance:*
*Fraud-On-The-Market Doctrine*

44.  At all relevant times, the market for Biopure's securities was an efficient market for the following reasons, among others:

(a)  Biopure's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)  As a regulated issuer, Biopure filed periodic public reports with the SEC and the NASD;

(c)  Biopure regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Biopure was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

45.  As a result of the foregoing, the market for

Biopure's securities promptly digested current information regarding Biopure from all publicly available sources and reflected such information in Biopure's stock price. Under these circumstances, all purchasers of Biopure's securities during the Class Period suffered similar injury through their purchase of Biopure's securities at artificially inflated prices and a presumption of reliance applies.

## No Safe Harbor

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking

statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Biopure who knew that those statements were false when made.

FIRST CLAIM

Violation Of Section 10(b) Of The Exchange Act
And Rule 10b-5 Promulgated Thereunder
Against All Defendants

47. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

48. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including plaintiffs and other Class members, as alleged herein; (b) enable the Individual Defendants and other Biopure insiders to sell more than $1.6 million worth of their personally-held shares of Biopure common stock at artificially inflated prices; and (c) cause plaintiffs and other members of the Class to purchase Biopure's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.  Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Biopure's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.  Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Biopure as specified herein.

51.  These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an

effort to assure investors of Biopure's value and
performance and continued substantial growth, which
included the making of, or the participation in the making
of, untrue statements of material facts and omitting to
state material facts necessary in order to make the
statements made about Biopure and its business operations
and future prospects in the light of the circumstances
under which they were made, not misleading, as set forth
more particularly herein, and engaged in transactions,
practices and a course of business which operated as a
fraud and deceit upon the purchasers of Biopure securities
during the Class Period.

52.   Each of the Individual Defendants' primary
liability, and controlling person liability, arises from
the following facts: (a) the Individual Defendants were
high-level executives and/or directors at the Company
during the Class Period and members of the Company's
management team or had control thereof; (b) each of these
defendants, by virtue of his responsibilities and
activities as a senior officer and/or director of the
Company was privy to and participated in the creation,
development and reporting of the Company's internal
budgets, plans, projections and/or reports; (c) each of

these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (d) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

53. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Biopure's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and

omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Biopure's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Biopure's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiffs and the other members of the Class acquired Biopure securities during the Class Period at artificially high prices and were damaged thereby.

55. At the time of said misrepresentations and omissions, plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.

Had plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Biopure was experiencing, which were not disclosed by defendants, plaintiffs and other members of the Class would not have purchased or otherwise acquired their Biopure securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

SECOND CLAIM

Violation Of Section 20(a) Of The Exchange Act
Against Individual Defendants

58. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

59. The Individual Defendants acted as

controlling persons of Biopure within the meaning of
Section 20(a) of the Exchange Act as alleged herein. By
virtue of their high-level positions, and their ownership
and contractual rights, participation in and/or awareness
of the Company's operations and/or intimate knowledge of
the false financial statements filed by the Company with
the SEC and disseminated to the investing public, the
Individual Defendants had the power to influence and
control and did influence and control, directly or
indirectly, the decision-making of the Company, including
the content and dissemination of the various statements
which plaintiffs contend are false and misleading. The
Individual Defendants were provided with or had unlimited
access to copies of the Company s reports, press releases,
public filings and other statements alleged by plaintiffs
to be misleading prior to and/or shortly after these
statements were issued and had the ability to prevent the
issuance of the statements or cause the statements to be
corrected.

        60.   In particular, each of these defendants had
direct and supervisory involvement in the day-to-day
operations of the Company and, therefore, is presumed to
have had the power to control or influence the particular

transactions giving rise to the securities violations as alleged herein, and exercised the same.

61. As set forth above, Biopure and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## RELIEF REQUESTED

WHEREFORE, plaintiffs pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiffs as Lead Plaintiffs and certifying plaintiffs as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiffs counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages

sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 12, 2004       Respectfully submitted,

PERKINS SMITH & COHEN, LLP,

By: _____
Susan E. Stenger
One Beacon Street, 30th Floor
Boston, MA 02108-3106
Tel:  617-854-4000

WECHSLER HARWOOD LLP
Robert Harwood
Samuel K. Rosen
488 Madison Avenue, 8th Floor
New York, New York 10022
Tel:  212-935-7400

- 36 -

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP
Marc I. Gross
100 Park Avenue, 26th Floor
New York, NY 10017-5516
Tel: 212-661-1100

LAW OFFICES OF CHARLES PIVEN
World Trade Center
401 E. Pratt St, Suite 2525
Baltimore, MD 21202
Tel: 410-332-0030

LAW OFFICES OF RICHARD J.
VITA
77 Franklin Street, 3rd Floor
Boston, MA 02110
Tel: 617-426-6566

*Attorneys for Plaintiffs*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.    I, James J. Nizzo, make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

2.    I have reviewed the Complaint against Biopure Corporation and authorize its filing on my behalf.

3.    I did not purchase my Biopure securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz firm may exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.    The following are all of my transactions in Biopure securities during the period from March 17, 2003 through December 24, 2003, the Class Period, as specified in the Complaint:

| Date | Purchase or Sale | Number/Type of Securities | Price of Securities |
|------|------------------|---------------------------|---------------------|
| 08/29/03 | Purchase | 1,000 shares | $8.17 |

6.    During the three year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows (if none, leave blank):

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed ___1/7___, 2004, at ___Manhasset H.ls, NY___
                        (Date)                        Manhasset Hills, NY


_____
                (Signature)

James J. Nizzo

## PLAINTIFF'S CERTIFICATION

_Carla Ciliberti_ ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in Biopure Corporation securities during the Class Period are as follows:

(Complete only one trade per line; place any additional trades on the attached sheet)

| # of Shares Purchased | # of Shares Sold | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
|  | 300 | 6.00 | 5/28/03 |
|  | 200 | 6.00 | 5/28/03 |
|  | 425 | 6.15 | 6/16/03 |

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _6_ day of _January_ 2004.

_Carla S. Ciliberti_

## ATTACHMENT TO CERTIFICATION

Biopure Corporation Securities Litigation

Name: _Carlo Ciliberti_

(please complete only one trade per line)

| # of Shares Purchased | # of Shares Sold | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 500 | | 5.80 | 6/16/03 |
| 452 | | 5.75 | 6/20/03 |
| | 425 | 6.22 | 6/27/03 |
| 337 | | 6.00 | 7/17/03 |
| | 337 | 8.25 | 8/1/03 |
| 300 | | 7.64 | 8/26/03 |
| 80 | | 5.75 | 9/26/03 |
| | 100 | 3.083 | 11/18/03 |
| | 250 | 2.72 | 12/11/03 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |