# *COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.*

## *COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.*

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C. is widely recognized as one of the leading

plaintiffs' law firms in the United States. Cohen, Milstein represents individuals, small businesses,

institutional investors, and employees in many of the major class action cases litigated in the United States

for violations of the antitrust, securities, environmental, consumer protection, discrimination and human

rights laws. The firm is one of the best-known firms handling plaintiffs' class actions in the country and is

at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal

recourse for aggrieved individuals and businesses. Cohen, Milstein has obtained numerous landmark

judgments and settlements for individuals and businesses in the United States and abroad. Its practice areas

include antitrust, securities, environmental, consumer protection/product liability, civil rights/employment

discrimination, ERISA and human rights litigation.


Cohen, Milstein's most significant cases include:


- In re Vitamins Antitrust Litigation, MDL No. 1285 (D.D.C.). Since 1999, Cohen, Milstein has represented as co-lead counsel two certified classes of businesses who directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan has approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a recent trial before Chief Judge Hogan of four of Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against those defendants.

- Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al., Civil Action No. 00-015 (Knox County Superior Court, Me.). Cohen, Milstein, Hausfeld & Toll, P.L.L.C. has been co-lead counsel on this case since its inception in 2000. On November 18, 2003, a Maine state court jury found three blueberry processing companies liable for participating in a four-year price-fixing and

non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The three defendants are jointly and severally liable for the damages.

- In re StarLink Corn Products, Liability Litigation, MDL No. 1403. CMHT successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. Nevertheless, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. CMHT, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement is the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., Case No. 1:01CV02313 (D.D.C.). Cohen, Milstein, Hausfeld & Toll, P.L.L.C. has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen, Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- In re Lorazepam and Clorazepate Antitrust Litigation, MDL No. 1290, United States District Court for the District of Columbia. Generic drug maker Mylan Pharmaceuticals, Inc. entered exclusive deals to lock up supply of the raw ingredients for two popular anti-anxiety medications. Mylan then raised the prices of the drugs by thousands of percent. CMHT served as co-lead counsel and obtained a $35 million settlement for direct purchasers of the affected medications.

- Kruman v. Christie's International PLC, et al., Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was recently approved. CMHT served as one of three leading counsel on behalf of foreign plaintiffs. In certifying the class and approving the settlement, Judge Kaplan characterized the settlement as a "good result" particularly in light of the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marks the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

2

- <u>In re Flat Glass Antitrust Litigation</u>, MDL No. 1200, United States District Court for the Western District of Pennsylvania. Plaintiffs allege that the five major manufacturers of float glass and automotive replacement glass conspired to fix prices on a wide variety of glass products. CMHT served as co-lead counsel and obtained a total of $61.7 million in settlement funds on behalf of glass shops, window manufacturers, and others who directly purchased the affected products from the defendants.

- <u>In re Buspirone Antitrust Litigation</u>, MDL No. 1413 (S.D.N.Y.). Plaintiffs allege that Bristol Myers-Squibb Company, a producer of the drug BuSpar®, unlawfully maintained a monopoly in violation of federal and state antitrust and unfair competition laws. A $90 million settlement was preliminarily approved in April 2003. CMHT served as one of four co-lead counsel.

- <u>IVAX Corp. v. Atofina Chemicals, Inc., et al.</u>, Civ. No. 02-00593, United States District Court for the District of Columbia. Plaintiffs allege that the major global producers of certain chemicals known as organic peroxides have conspired to fix prices on their products. Organic peroxides are used in the manufacture of plastics and certain rubber products. CMHT is lead counsel and obtained a $16 million settlement with one defendant, Akzo Nobel Chemicals BV, on behalf of direct purchasers of the chemicals. The remainder of the case is still pending.

- <u>In re Infant Formula Consumer Antitrust Litigation</u> (multiple state courts). Cohen, Milstein, Hausfeld & Toll, P.L.L.C. instituted price-fixing cases on behalf of indirect-purchasers in 17 states under state antitrust laws against three companies who conspired to drive up the price of infant formula. The cases have resulted in settlements of $64 million for purchasers of infant formula.

- <u>In re The Exxon Valdez Litigation</u>, No. A89-095 Civ. (D. Alaska). The firm was selected from dozens of law firms around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history that resulted in a jury verdict of more than $5 billion (reversed and remanded for revised punitive damages award).

- <u>Holocaust Litigation</u>. In the historic Swiss Banks litigation, CMHT served, *pro bono,* as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry and art treasures. CMHT obtained a $1.25 billion settlement, leading the presiding judge to call the firm's work "indispensable." *See In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849 (ERK) (MDG) (Memorandum of Chief Judge Korman dated July 26, 2002). CMHT was also a lead counsel in litigation by survivors of World War II-era forced and slave labor in litigation against the German companies that profited from using the labor of concentration camp inmates. This litigation, which resulted in an unprecedented settlement of $5.2 billion, was resolved by multinational negotiations involving the defendants, plaintiffs' counsel, and the governments of several countries. Approximately 2 million claimants will receive compensation from this fund.

CMHT has contributed over 37,000 hours of time to human rights and *pro bono* cases since 1996. For example, CMHT represented eight survivors and/or families of the victims of the September 11,

3

2001 attack on the Pentagon before the Federal compensation fund. CMHT has obtained a substantial recovery for each, including the highest recovery to date, $6.8 million, for an injured individual.

- _Roberts v. Texaco, Inc._, 94-Civ. 2015 (S.D.N.Y.). Cohen, Milstein represented a class of African-American employees in this landmark litigation that resulted in the largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for _inter alia_ "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- _In re Diet Drug Litigation (Fen-Phen)_, MDL No. 1203 (E.D. Pa.). As a member of the Plaintiffs' Management Committee and Sub-Class Counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C. played a major part in the success of the Fen-Phen diet drug litigation and settlement _(In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation_, MDL 1203). CMHT and other plaintiffs' counsel achieved the largest settlement ever obtained in a mass tort case - $3.75 billion - on behalf of millions of U.S. consumers who used Pondimin (fenfluramine) or Redux (dexfenfluramine) alone or in combination with phentermine, diet drugs that were found to be associated with heart valve damage.

- _In re Microsoft Corp. Antitrust Litigation_, MDL No. 1332 (D. Md.). Cohen, Milstein is one of two co-chairs of the plaintiffs' lead counsel committee. The firm is responsible for leading this massive litigation, not only on behalf of the dozens of cases filed in federal court, but also through close coordination with the many state-court actions pending around the country.

- _In re Lucent Technologies Securities Litigation_, Civ. Action No. 00-621 (JAP) (D.N.J.). A proposed settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever. Cohen, Milstein represented one of the co-lead plaintiffs in this action, The Parnassus Fund, a mutual fund based in San Francisco, California.

- _Conanan v. Tanoue_, No. 00-CV-3091 (ESH). Cohen, Milstein, Hausfeld & Toll, P.L.L.C. represented African-American employees at the Federal Deposit Insurance Corporation (FDIC) in a race discrimination suit, which settled for $14 million. The settlement provides the largest payment made in an employment discrimination class action based on race against a federal agency.

- _Trotter v. Perdue Farms, Inc._, Case No. 99-893 (RRM) (JJF) (MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken processing facilities -- which employ approximately 15,000 people -- forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply. The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to

4

issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. CMHT was co-lead counsel. The settlement was approved by the Court in fall 2002 and money was distributed in early 2003.

- <u>In re Domestic Air Transportation Antitrust Litigation</u>, MDL No. 861 (N.D. Ga.). Cohen, Milstein was one of the lead counsel for class plaintiffs in this case, which was one of the largest consumer class actions ever brought to a successful conclusion. The class obtained a settlement of travel discounts and cash of $458 million.

- <u>Snyder v. Nationwide Mutual Insurance Company</u>, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen, Milstein, Hausfeld & Toll, P.L.L.C. served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. Cohen, Milstein obtained a settlement valued at more than $85 million. The Judge in <u>Snyder</u> praised the efforts of Cohen, Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- <u>Paper Systems Inc., et al. v. Mitsubishi Corp., et al.</u>, No. 96-C-0959 (E.D. Wis.). Cohen, Milstein, Hausfeld & Toll, P.L.L.C., as lead counsel in this class action involving an international cartel to fix jumbo roll thermal facsimile paper prices in the United States, settled with the remaining defendants on the eve of trial in February 2001 for over $16 million, well in excess of the damages calculated by plaintiffs' expert. CMHT and its co-counsel achieved this result even though two of the defendants were acquitted in their parallel criminal cases. Plaintiffs' efforts included reviewing and translating numerous documents written in Japanese and taking several depositions in Japan and London.

In addition, Cohen, Milstein is at the forefront of new areas of the law. The firm was in the forefront of filing antitrust claims on behalf of indirect purchasers. In 1993 and 1994, the firm filed state-court actions in 18 states on behalf of indirect purchasers of infant formula. This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states in which their antitrust laws permitted such claims. This approach, and variations of it, have since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers. Prior to the infant formula consumer litigation, state indirect cases had been filed almost exclusively in California, although 17 other states had the requisite legislation on their books.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C. has been in the forefront of the development of

international antitrust theory and litigation of claims. As the global economy has produced worldwide

conglomerates, so, too, has the nature of antitrust violations changed. Thus, for example, in *Kruman v.*

*Christie's International PLC, et al.* Docket No. 01-7309 and *In re Bulk Vitamins Antitrust Litigation*, MDL

1285 (D.D.C.), both the parties and the anticompetitive actions were played out on a world, rather than

domestic, stage.

The firm also has successfully defended constitutional rights of public officials and citizens in a

series of lawsuits brought by companies attempting to use the legal system to intimidate political

adversaries with lawsuits aimed at political speech and constitutionally-protected conduct. Cohen,

Milstein, Hausfeld & Toll, P.L.L.C. is dedicated to providing the highest quality legal representation to

aggrieved individuals, consumers, investors, citizens and employees, as well as handling complex,

innovative litigation.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C. was established in March 1986 and has satellite offices

in New York and Chicago. From 1969 until its formation in 1986, the firm was the Washington, D.C.

office of the Philadelphia law firm currently known as Kohn, Swift & Graf, P.C. Members of the firm have

litigated numerous securities, antitrust and product liability class actions in which they played a principal or

lead role or served on the Executive Committee of plaintiffs' counsel.

Cohen, Milstein has had one of the most varied and extensive practices in the United States, and it

has played a prominent role in major litigation since 1969. These cases include:

In re North Atlantic Air Travel Antitrust Litigation, Civ. Action No. 84-1103 (D.D.C.); the firm, as
co-lead counsel, obtained a class settlement of $30 million in coupons for air travelers between the
United States and England.

In re Screws Antitrust Litigation, MDL No. 443 (D. Mass); the firm, as co-lead counsel, obtained a
class settlement of approximately $50 million.

Ocean Shipping Antitrust Litigation, MDL No. 395 (S.D.N.Y); the firm, as co-lead counsel, obtained a class settlement of approximately $50 million.

In re Corrugated Container Antitrust Litigation, MDL No. 310 (S.D. Tex.); the firm was one of a handful of firms involved in the successful trial of this massive antitrust case which was eventually settled for approximately $366 million.

Murphy, Derivatively On Behalf of Nominal Defendant National Health Laboratories Incorporated v. Perelman, Case No. 659511 (Cal. Sup. San Diego Cty.); as one of co-lead counsel in the derivative action, the firm and others obtained a global settlement of class and derivative litigation for a total of $70 million.

Masonite Hardboard Siding Litigation, (State Court, Alabama); the firm, as one of the lead counsel, obtained a settlement valued at hundreds of millions of dollars.

Polybutylene Pipe Litigation, (State Court, Texas); the firm helped obtain a settlement valued at $900 million.

Biben v. Card, No. 84-0844-CV-W-6 (W.D. Mo.); the firm, as one of two co-lead counsel, negotiated settlements for $11.9 million, which was 93% of class members' damages.

In re Newbridge Networks Securities Litigation, Civ. Action No. 90-1061 (D.D.C.); the firm, as co-counsel handling this case, obtained a cash and stock class settlement valued at approximately $20 million.

Jiffy Lube Securities Litigation, Civ. Action No. Y-89-1939 (D. Md.); the firm, as co-lead counsel, obtained class settlements for a total of $12 million.

In re Saxon Securities Litigation, Civ. Action No. 82 Civ. 3103 (S.D.N.Y.); the firm, as co-lead counsel, obtained a class settlement of approximately $20 million.

Grossman v. Waste Management, Civ. Action No. 83 Civ. 2167 (N.D. Ill.); the firm, as co-lead counsel, obtained a class settlement of approximately $13 million.

In re Warner Communications Securities Litigation, 618 F. Supp. 735 (S.D.N.Y. 1986); the firm was one of plaintiffs' counsel in this case where a class settlement of $18.4 million was obtained.

In re Tandon Securities Litigation, No. CV86-4566 (C.D. Cal.); the firm played a major role in this class action where settlement was valued at approximately $16 million.

Immunex Securities Litigation, No. C92-548WD (W.D. Wash.); the firm was one of lead counsel where the largest securities class action settlement in Seattle -- $14 million -- was recovered.

In re Caremark Securities Litigation, Case No. 94 C 4751 (N.D. Ill.); the firm, as co-lead counsel, obtained a class settlement of $25 million.

In re Commercial Explosives Antitrust Litigation, Consolidated Case No. 2:96md 1093S (D. Utah); the firm, as co-lead counsel, obtained a settlement of $77 million.

Cohen, Milstein has also served as lead or co-lead counsel, or on Plaintiffs' Executive Committee(s) in the following cases:

In re Travel Agent Commission Antitrust Litigation, MDL No. 1058 (D. Minn.).

In re Infant Formula Antitrust Litigation, MDL No. 878 (N.D. Fla.).

Carbon Dioxide Antitrust Litigation, MDL No. 940 (M.D. Fla.).

Catfish Antitrust Litigation, MDL No. 928 (N.D. Miss.).

Chain Link Fence Antitrust Case, Master File No. CLF-l (D. Md.).

Ocean Shipping Antitrust Litigation, MDL No. 395 (S.D.N.Y.).

College Bound Consolidated Litigation, Case No. 93-CIV-2348 (MBM) (S.D.N.Y.).

In re Tokos Medical Corp. Securities Litigation, Master File No. SACV-92-791-GLT (S.D. Cal.).

HMO America Securities Litigation, Master File No. 92 C 3305 (N.D. Ill.).

In re Physician Corp. of America Securities Litigation, Case No. 97-3678-CIV-Jordan (S.D. Fla.).

In re Transcrypt International Inc. Securities Litigation, Master File No. 4:98CV3099 (D. Neb.).

In re Nextel Communications Securities Litigation, Master File No. 94-4123 (HAA) (D.N.J.).


Biographical sketches of the firm's attorneys follow:


## HERBERT E. MILSTEIN

For the past 37 years, Herbert E. Milstein has focused on complex securities and business litigation and on class actions. He has been and continues to be lead counsel in numerous federal court actions across the country and is an expert in both class and securities actions.

He formerly served on the staff of the Securities and Exchange Commission for five and one-half years, and last held the position of Chief Enforcement Attorney, Division of Corporate Regulation. From 1976-1980, Mr. Milstein served as Equity Receiver for National American Life Insurance Company, appointed by Judge Charles R. Richey, in *SEC v. National Pacific Corp.* Mr. Milstein and his firm served "with distinction," in the words of the Chairman of the SEC.

An adjunct Professor of Law at Georgetown University Law Center from 1980-1987, where he

taught complex litigation, Mr. Milstein continues, as he has done for the past 30 years, to lecture on securities litigation and class actions at law schools and seminars throughout the United States. In 1985, he was awarded a Silver Gavel by the American Bar Association as a distinguished example of public service. Mr. Milstein is the author of articles on topics involving class actions litigation and the Federal securities laws.

Formerly President of the National Association of Securities and Commercial Law Attorneys (NASCAT), he also served as treasurer of that organization for six years. He is a member of the American Law Institute and is a member and a former Chairman of the Executive Council of the Securities Law Committee of the Federal Bar Association.

Mr. Milstein graduated from Harvard College (B.A., *cum laude*, 1958) and Columbia University School of Law (LL.B. 1961). Mr. Milstein has been admitted to practice in Washington, D.C. and Massachusetts.

## MICHAEL D. HAUSFELD

Michael D. Hausfeld is one of the country's top civil litigators, specializing in antitrust, human rights, employment discrimination, environmental and consumer rights cases.

Mr. Hausfeld was recently recognized by the National Law Journal as one of the "Top 100 Influential Lawyers in America." In a recent opinion by Chief Judge Edward Korman of the Eastern District of New York, Mr. Hausfeld was characterized as one of the two "leading class action lawyers in the United States." He has been described by one of the country's leading civil rights columnists, Nat Hentoff, as an "extremely penetrating lawyer"; and by a colleague in the Washington Post, as a lawyer who "has a

very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school." The <u>New York Times</u> refers to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers." The <u>Washingtonian</u> has listed Mr. Hausfeld for the past several years as one of Washington's 75 best lawyers, saying he "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world and succeeding."

The <u>Wall Street Journal</u>, in a recent profile of Mr. Hausfeld, noted that he has added an ever-broadening portfolio of social reform cases to his successful practice. Mr. Hausfeld was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII and successfully tried the first case establishing that principle. Since then, his practice has included successful representations of Native Alaskans affected by the 1989 Exxon Valdez oil spill. In 1996, focusing the attention of the nation on racism in corporate America, he negotiated a historical $176 million racial bias settlement from Texaco, Inc. In *Friedman v. Union Bank of Switzerland, et al.*, Mr. Hausfeld represented a class of victims of the Holocaust whose assets were wrongfully retained by private Swiss banks during or after World War II. The case raised novel issues of international banking law and international human rights law. He has successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation, on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution during World War II. Mr. Hausfeld currently represents Jubilee 2000, Khulamini, and other NGOs in litigation involving abuses under apartheid law in South Africa.

Mr. Hausfeld has had an extremely varied antitrust litigation practice. He has a long record of successful litigation, both on behalf of individuals and classes, in cases involving monopolization, tie-ins,

exclusive dealings and price-fixing. Over his career, his aggregate multi-billion dollar recoveries have been against oil companies, telecommunication companies, paper manufacturers, pharmaceutical companies, auto manufacturers, and electronic manufacturers. Mr. Hausfeld and his firm are currently co-lead counsel in courtroom antitrust assaults on manufacturers of genetically engineered foods, managed healthcare companies, bulk vitamin manufacturers, tobacco companies, technology industries, auto racing monopolies, and international industrial cartels. He is actively involved in ongoing investigations into antitrust cases abroad, and was the only private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

Recent awards include the 2002 B'Nai Brith "Humanitarian of the Year" award; the Simon Wiesenthal Center Award for Distinguished Service; and the U.S. Department of Energy's Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

Mr. Hausfeld was born in Brooklyn, New York in 1946 and was admitted to the bar of the District of Columbia in 1969. Education: Brooklyn College (A.B., *cum laude*, 1966); the National Law Center, George Washington University (J.D., *with honors*, 1969). Order of the Coif. Member, Board of Editors, George Washington Law Review, 1968-69. Adjunct Professor of Complex Litigation, Georgetown University Law Center, 1980-87. Adjunct Professor, George Washington University, 1996-98. Board of Directors, George Washington University Law School, 1998 to present.


### STEVEN J. TOLL


Profiled in the February 1996 Washington Business Journal as one of five attorneys that stand out

as the "cream of the crop" in the Washington D.C. legal community, Steven J. Toll has been lead or

principal counsel in some of the best known stock fraud cases over the past 20 years. He opened the firm's

Seattle office in October 1996. He was named Managing Partner of the firm in 1997. By 1999 he was

selected by his peers as one of the top lawyers in the State of Washington, as reported in <u>Washington Law</u>

<u>and Politics Magazine</u>. In November 2000, he returned to D.C. to run the firm.

Some of Mr. Toll's more notable cases include those against Caremark, Inc. ($25 million recovery

for shareholders), which pled guilty to Medicare fraud and paid the U.S. Government a fine of

approximately $160 million; National Health Labs, which paid $65 million to settle shareholder and

derivative cases; *In re Saxon Securities Litigation*, fraud involving fictitious photocopier sales (recovery of

$20 million); *In re Immunex Securities Litigation*, biotech company accused of concealing significant

business problems (largest securities class action settlement in Seattle - $14 million); *Grossman v. Waste

Management*, defendant accused of withholding information concerning violations of the environmental

laws and failure to comply with federal and state regulatory standards (recovery of over $13 million); *In re

Jiffy Lube Securities Litigation*, company accused of deceptive accounting practices to hide its true

financial condition (recovery of $12 million); and Itron Securities Litigation, defendants accused of

concealing flaws in its technology (recovery of $12 million).

Mr. Toll also served as co-lead counsel in one of the most publicized frauds of the 1990s -- Cascade

International, where the mastermind of the fraud, Victor Incendy, is still a fugitive from justice. The case

settled on the eve of trial against Raymond James Inc. for $9 million -- the only securities class action ever

successfully litigated against a brokerage firm for its role as a research analyst.

Mr. Toll's vast experience in suing companies for defrauding their shareholders has involved him in

uncovering all kinds of fraudulent and misleading business practices, including those where a company

cooked its books through fraudulent accounting entries, shipped boxes of bricks instead of computer products, lied about supply problems, inventory problems, management concerns, revenue recognition practices, healthcare fraud, false advertisement of products, fraudulent banking practices and setting of reserves. Cases in which Mr. Toll has been principally involved have led to settlements which have returned to investors hundreds of million of dollars.

Mr. Toll has also been involved with some of the largest product liability class action cases ever. For example, *Cox v. Shell Oil* resulted in a $950 million settlement for defective polybutylene piping. In addition, Mr. Toll has been involved in litigating against Masonite, Louisiana Pacific and Weyerhaeuser for defective hardboard siding, which have resulted in recoveries of hundreds of millions of dollars for homeowners. He is also involved in litigating the firm's employment discrimination cases pending against Boeing Corp. (for female and Asian-American employees) and Microsoft Corp. (for female and African-American employees).

Mr. Toll is an honors graduate of the Wharton School of the University of Pennsylvania (B.S., *cum laude,* 1972). He graduated from Georgetown University Law Center (J.D. 1975) where he was Special Project Editor of the Tax Lawyer.

## LISA M. MEZZETTI

Lisa Mezzetti joined Cohen, Milstein in 1984, and since then has worked exclusively on consumer litigations and securities regulation actions (in class actions, private litigations and arbitrations).

In consumer cases, Ms. Mezzetti is or was one of the Lead Counsel in *In re Lupron Marketing and Sales Practices Litigation* and related cases (D. Mass.) (cases brought by consumers and private insurers

14

and other drug payers against pharmaceutical companies concerning their pricing practices for certain

drugs); *Howard v. Ford Motor Co.* (Sup. Ct. Cal.) (one of trial counsel in consumer case for millions of car

owners alleging fraud; order of the Court on equitable count required prospective recall of 1.7 million cars;

settled immediately before scheduled second jury trial); *Fischl v. Direct Merchants Credit Card Bank*

(Minn. Dist. Ct.) (brought by credit card consumers, alleging improper charges and payment processes);

*Ford v. General Motors Acceptance Corp.* (E.D. Ark.) (alleging fraudulent charging of dealer reserves on

automobile financing); *Ferguson v. Columbia/HCA Healthcare Corp.* (Cir. Ct. Tenn.) (a consumer class

action alleging hospital billing overcharges); and *In re Synthroid Marketing Litigation* (N.D. Ill.) (a series

of consumer and antitrust class actions). She has litigated class actions under the ERISA laws; she also

brought one of the first class actions filed under the federal Family and Medical Leave Act.

In her securities work, Ms. Mezzetti represented the corporate plaintiff in a private litigation

alleging damages of more than $40 million from the purchase of a healthcare technology company, and

represented 1,900 plaintiffs in a series of 25 federal court suits concerning municipal bonds. Her

shareholder class actions include *Murphy, Derivatively On Behalf of Nominal Defendant National Health

Laboratories Inc. v. Perelman* (Cal. Sup. Ct.) (global settlement of class and derivative litigations for total

of $70 million); *Flecker v. Hollywood Entertainment Corp.* (D. Or.) ($15 million settlement, reached day

before trial was to begin); and *Biben v. Card*, (W.D. Mo.) (93% of class members' damages recovered in

settlement). She also has represented parties in securities arbitrations (both as claimant's counsel or

defense counsel for the broker) and defended clients in investigations and enforcement actions of the

Securities and Exchange Commission. She is a public arbitrator for the National Association of Securities

Dealers, hearing disputes between customers and brokers.

Ms. Mezzetti graduated from the Columbus School of Law, Catholic University of America in

1980, where she served as a Vice-Chancellor of the Moot Court Board. In 1986, she received a Master of

Laws degree, with a specialty in Securities Regulation, from Georgetown University Law Center. Her

bachelor's degree was awarded from Stonehill College in Massachusetts; she graduated with a B.A., *magna*

*cum laude*, in 1977.

She has been a panelist at several legal education seminars and conventions and was a guest panelist

on a D.C. cable television show concerning hiring and working with stock brokers and financial advisors.

Ms. Mezzetti serves as Vice-President and a Member of the Board of Directors of The International

Alliance for Women, a worldwide, non-profit organization that supports and promotes women

entrepreneurs and professional and executive women in the business, government and not-for-profit sectors.

Ms. Mezzetti has been admitted to practice in Washington, D.C. and New York State.


## ANDREW N. FRIEDMAN

Andrew N. Friedman concentrates on complex litigation involving the federal securities laws,

consumer fraud and product liability cases. Since 1985, Mr. Friedman has been involved in some of the

best known securities class actions.

Among other securities cases, Mr. Friedman served as one of co-lead or principal counsel in:

*Norman Frank, et al. v. David L. Paul* (recovery of over $18 million for purchasers of CenTrust Bank

securities); *In re Jiffy Lube Securities Litigation* (recovery of over $12 million); and *In re Immunex*

*Securities Litigation* (recovery of $14 million -- the largest securities class action settlement in Seattle).

Mr. Friedman was one of the firm's attorneys selected by the County of Cuyahoga, Ohio to

prosecute a lawsuit which sought to recover losses from the County's Secured Assets Fund Earnings

Program (S.A.F.E.).  The lawsuit alleged that broker/dealers and a financial institution assisted the County in engaging in unsuitable and inappropriate investments and trading activity.  In November and December of 1997, the firm was able to secure a very favorable settlement from all defendants totaling $9.5 million.

In the consumer fraud and products liability area, Mr. Friedman has been instrumental in securing significant recoveries on behalf of thousands of consumers.  For example, Mr. Friedman was one of the principal counsel in *Snyder v. Nationwide Mutual Insurance Company,* Index No. 97/0633 (Sup. Ct. of New York, Cty. of Onondaga), a class action which resulted in a settlement valued at between $85 million and $103 million.  The settlement provides relief for those persons or entities who have or had an ownership interest in one or more life insurance policies issued by Nationwide through its captive agency force during the Class Period.  Similarly in *Duckworth v. Country Life Insurance Co.,* No. 98 CH 1046 (Cook Cty. Ill. Cir. Ct.), Mr. Friedman was one of the principal counsel in securing more than $44 million in benefits on behalf of a class of Country Life insurance policies, whose premiums would purportedly "vanish," but did not.

As one of two co-lead counsel in a class action against Thomson Consumer Electronics, Inc., Mr. Friedman was able to reach a court-approved agreement with Thomson that, among other things, made up to an aggregate of $100 million available for those persons with unreimbursed repairs to their RCA ProScan and GE televisions.  A similar settlement was reached on behalf of certain Panasonic and JVC DVD purchasers which provided up to $100 per person of unreimbursed repair costs.

Mr. Friedman graduated from Tufts University in 1980 (B.A., *magna cum laude,* Phi Beta Kappa) and is a 1983 graduate of the George Washington University National Law Center.  Prior to joining Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.  He has been admitted to practice in Washington, D.C. and New York State.  Mr.

Friedman has been a speaker on numerous panels and legal education seminars on various topics, including securities class actions and accounting fraud. Mr. Friedman was featured in a November 15, 1997 Washington Post article about securities class actions and profiled in the April 14, 2000 edition of the Washington Business Journal. Mr. Friedman is currently serving as the firm's hiring partner.

## RICHARD S. LEWIS

Mr. Lewis graduated from Tufts University (B.A., *cum laude*, 1976), and earned his master's in Public Health degree from the University of Michigan (1981), and his law degree from the University of Pennsylvania (J.D., *cum laude*, 1986). He was Comments Editor for the University of Pennsylvania Law Review (1985-86) and authored the Comment, *O.C.A.W. v. American Cyanamid: The Shrinking of the Occupational Safety and Health Act*, U. Pa. L. Rev. (July 1985). After law school, he was a law clerk for the Honorable Stanley S. Brotman, U.S. District Court for the District of New Jersey.

Mr. Lewis concentrates on toxic torts and antitrust litigation. He has been appointed to serve as co-lead counsel in mass tort and class action cases including *In re StarLink,* MDL No. 1403 (co-lead counsel) (claims by farmers regarding StarLink corn), and *In re PPA,* MDL No. 1407 (claims by users of unsafe medicines). In addition, he has served as lead counsel in numerous suits to obtain medical monitoring relief for communities exposed to toxic chemicals from hazardous waste disposal practices or unsafe drugs, including *In re Diet Drug Litigation (Fen-Phen),* MDL No. 1203; *Yslava v. Hughes* (TCE contaminated drinking water in Tucson, AZ); *Bocook v. Ashland* (air pollution from oil refinery in W. Va.); and *Harman v. Lipari* (Superfund site in New Jersey). He has also litigated both individual and class childhood lead poisoning cases, including *Arevalo v. Neubauer* (lead paint poisoned child in D.C.); *Hunter v. Pneumo Abex* (children lead poisoned by foundry in Norfolk, VA neighborhood); and *Wagner v. Anzon* (children

lead poisoned by foundry in Philadelphia, PA neighborhood); and he is presently developing cases against

the lead pigment industry on behalf of cities and states and also represents the City of Milwaukee, *City of

Milwaukee v. NL Industries Inc.*

Mr. Lewis has also litigated major antitrust actions, including *Sample v. Monsanto* (genetically

modified corn and soy seeds) and *In re Airline Ticket Commissions Litigation* (Travel Agents).

Mr. Lewis has been admitted to practice in Washington, D.C.


## DANIEL S. SOMMERS

Daniel S. Sommers specializes in federal securities class action lawsuits. He has litigated numerous

cases which resulted in multi-million dollar recoveries for investors including *In re TrustCorp Securities

Litigation* (recovery of $5.6 million); *In re Y&A Group Securities Litigation* (recovery of $2.5 million);

*Steiner v. Southmark Corporation* (recovery of over $70 million); *In re Cascade International Securities

Litigation* (recovery of over $9.8 million); *In re PictureTel Inc. Securities Litigation* (recovery of $12

million); and *In re Nextel Communications Securities Litigation* (recovery of up to $27 million). He also

represented a privately held corporation in a complex multi-party action alleging fraud in a corporate

acquisition. *See TBG Inc. v. Bendis*, 36 F.3d 916 (10th Cir. 1994). Several of Mr. Sommers' cases resulted

in important published district and appellate court decisions.

In addition, Mr. Sommers was a guest panelist on "Its Your Business," a nationally syndicated

television program, where he spoke on investor lawsuits. He has been quoted in Investor Relations

magazine on the impact of the Private Securities Litigation Reform Act of 1995 and has been a featured

panelist at the George Washington University Law School, where he spoke on the practice of law from the

plaintiff's perspective.

He is a 1983 graduate of Union College (B.A., *magna cum laude*) and a 1986 graduate of the George Washington University Law School.  Mr. Sommers is a member of the American Bar Association Section of Litigation Committee on Securities Litigation.  He is admitted to practice in numerous courts, including the United States District Courts for the District of Columbia and New Jersey and the United States Courts of Appeals for the Fourth, Ninth, Tenth and Eleventh Circuits.


## DANIEL A. SMALL

Daniel A. Small is a 1981 graduate of Colgate University (B.A., *cum laude*); he graduated from Washington College of Law in 1986.  He joined Cohen, Milstein, Hausfeld & Toll, P.L.L.C. after serving as law clerk to the Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida (1986 to 1988).  He specializes in antitrust litigation and has represented plaintiffs and plaintiff classes in numerous antitrust actions.  He is co-chair of the firm's Antitrust Practice Group.

Mr. Small has served as lead counsel for the plaintiffs in multiple antitrust class actions. The court appointed Mr. Small lead counsel in *Paper Systems Inc., et al. v. Mitsubishi Corp., et al.*, No. 96-C-0959 (E.D. Wisc.), involving an international conspiracy to fix prices of jumbo roll thermal facsimile paper.  The defendants settled for over $20 million, substantially in excess of the $14 million in damages estimated by the plaintiffs' expert.  Mr. Small was co-lead counsel for the end-user plaintiffs in *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.).  The case, which presented monopolization and market allocation claims against a brand name drug manufacturer for delaying generic entry, settled for $90 million.  Mr. Small is lead counsel for the plaintiffs in *Pease, et al. v. Jasper Wyman & Son, et al.*, No. CV-00-015 (Super. Ct.,

Knox Cty., Me.), a price-fixing class action on behalf of Maine wild blueberry growers.  The case was tried

in November 2003.  The jury returned a verdict for the plaintiff class in the amount of $18.68 million,

which after trebling and the addition of attorney fees and other costs, resulted in a judgment of

approximately $60 million.

Mr. Small has substantial appellate experience, including briefing and arguing *Free v. Abbott*

*Laboratories*, No. 99-391, in the United States Supreme Court.  The case presented the issue of whether a

supplemental jurisdiction statute overruled *Zahn v. International Paper Co*.  The Court split 4-4, with

Justice O'Connor recusing herself.  Mr. Small successfully briefed and argued appeals before the Seventh

Circuit Court of Appeals in *In re Brand Name Prescription Drug Antitrust Litig*., 123 F.3d 599 (7th Cir.

1997), on the issue of whether the district court had subject matter jurisdiction, and in *Paper Systems, Inc.*

*v. Nippon Paper Industries Co., Ltd*., 281 F. 3d 629 (7th Cir. 2002), holding that the federal direct

purchaser rule does not immunize a defendant from liability for the direct sales of its co-conspirators.  Mr.

Small briefed and argued the appeal in *Mack v. Bristol-Myers Squibb Co*., 1996-1 Trade Cas. (CCH) 71,401

(Fla. 1st DCA 1996), the first opinion construing the Florida Deceptive and Unfair Trade Practices Act to

permit indirect purchasers to sue for damages for antitrust violations.

Among the additional antitrust cases on which Mr. Small has worked or is working are: *In re Infant*

*Formula Antitrust Litig.*, MDL No. 878 (N.D. Fla.) (as well as 18 state-court actions on behalf of indirect

purchasers of infant formula); *Drill Bits Antitrust Litig.*, No. H-91-627 (S.D. Tex.); *In re Lease Oil*

*Antitrust Litigation*, MDL No. 1206; *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290

(D.D.C.); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317 (S.D. Fla.); *In re Microsoft*

*Antitrust Litig.*, MDL No. 1332 (D. Md.) (in which he is serving as chair of the experts' committee); *Ferko*

*v. NASCAR*, No. 4:02-CV-50 (E.D. Tex.) (asserting monopolization and group boycott claims regarding the

allocation of Winston Cup race dates); and *Rasmussen v. General Motors*, No. 03-CV-1828 (Cir. Ct.,

Milwaukee Cty., Wisc.), (and related cases in eight other states) (state-wide class actions alleging

conspiracy among auto manufacturers and distributors to maintain dual price system between United States

and Canada).

Mr. Small has been admitted to practice in Maryland and the District of Columbia.

.

## JOSEPH M. SELLERS

Joseph M. Sellers received a B.A. from Brown University in 1975 and a J.D. from Case Western

Reserve School of Law in 1979, where he served as Research Editor of the Law Review.  After practicing

in the labor and first amendment areas for three years with the Washington, D.C. firm of Pierson, Ball &

Dowd, he joined the Washington Lawyers' Committee for Civil Rights and Urban Affairs where he worked

for more than 15 years before joining the firm.  At the Washington Lawyers' Committee, Mr. Sellers

directed the Equal Employment Opportunity Project where he litigated more than 100 civil rights cases on

behalf of thousands of persons who had been denied equal employment opportunities, denied access to

places of public accommodation or were the subject of other deprivations of their civil and constitutional

rights.  Mr. Sellers has been the counsel of record, and often the lead counsel, in more than 25 civil rights

class actions and has represented persons with EEO claims arising under all grounds protected by federal

law and many state and local laws, including race, age, sex, disability and national origin.  He has tried the

only pattern and practice employment discrimination cases to juries in the country.  Mr. Sellers was also

counsel in the first cases in the country that adapted the use of civil rights testing to challenge

discriminatory hiring and job referral decisions.

Mr. Sellers also has extensive legislative experience, having participated in the efforts to enact the Civil Rights Act of 1991 and the Americans with Disabilities Act of 1990. He has chaired studies of procedures for adjudicating equal employment claims, testified on numerous occasions before Committees of the U.S. Congress as well as before state and local legislatures about civil rights issues. He has lectured nationally on various civil rights topics and trained lawyers on civil rights litigation techniques at various enforcement agencies, including the U.S. Department of Justice and the Equal Employment Opportunity Commission. As an adjunct professor, Mr. Sellers teaches equal employment law at the Washington College of Law and Professional Responsibility at the Georgetown University Law Center. Mr. Sellers chaired the Clinton/Gore Transition Team that reviewed the EEOC and selected offices of the Civil Rights Division of the U.S. Department of Justice.

## MARK S. WILLIS

Mark Willis concentrates on complex litigation involving violations of the federal securities laws.

Mr. Willis obtained a Master's in International Law from Georgetown University in 1993. In February, 1998, he authored Chapter 60 of Securities Law Techniques, titled *Admission of Securities to Official Listing on Stock Exchanges Within the European Union and the Subsequent Disclosure Obligations*. He published a related article in the Fall, 1997 issue of the International Law News, titled *A Brief Overview of the European Union's Efforts to Harmonize the Requirements for Listing Securities*. In February, 1998, Mr. Willis also authored Chapter 196 of Business Organizations with Tax Planning, titled *Company Laws of the European Union*. Mr. Willis graduated from Pepperdine University School of Law in 1989, where he also co-authored a comment entitled *Corporation Code Sections 309 and 1203:*

23

*California Redefines Directors' Duties Towards Shareholders*, Pepperdine Law Review, Volume 16, No.4(1989). He received his B.A. from Brigham Young University in 1986. Mr. Willis is also listed in The National Registry of Who's Who.

Mr. Willis joined Cohen, Milstein in 1989 and has worked primarily on complex litigation involving the federal securities laws, representing both large institutional investors and small shareholders. Among other notable cases, Mr. Willis has litigated against Caremark International (which was accused of federal medicare fraud and subsequently pled guilty and paid the U.S. Government a fine of approximately $160 million) resulting in a $25 million settlement; National Health Labs, which resulted in a $65 million settlement; and Nextel Communications which, along with Motorola, recently settled securities fraud claims for $27 million. Mr. Willis has been admitted to practice in the District of Columbia and the Commonwealth of Massachusetts.


STEPHEN D. ANNAND


Mr. Annand is an accomplished litigator with 28 years of experience in civil litigation in state and federal courts, primarily in Virginia and West Virginia, in the areas of healthcare, product liability, commercial disputes, insurance coverage and bad faith, personal injury and environmental law, among other substantive legal fields. Having served as lead trial counsel in over 50 significant jury trials during his career, he has tried cases lasting four to six weeks, as well as having tried many cases to the court. In addition, he has argued cases before the highest courts of several states, as well as the United States Court of Appeals for the Fourth Circuit. Mr. Annand is a 1972 graduate, *cum laude*, of the Washington and Lee University School of Law, where he was an Editor of the Law Review and a member of the National Moot

Court team.  He also received an LL.M. degree in 1975 in Environmental Law from the George

Washington University National Law Center.  He has been a speaker and panel member on numerous

occasions on a variety of issues, including HMO practices, medical negligence, environmental law,

insurance liability, evidence and trial practice, as well as lectures in brief writing and appellate advocacy in

the Lawyers' Role course at the Washington and Lee University School of Law.

Mr. Annand has concentrated for the past 15 years in litigation involving physician medical

negligence, hospitals and other healthcare providers, traditional health insurance companies and, more

recently, Health Maintenance Organizations.  Many of the cases in which Mr. Annand has been involved

have proceeded to trial after extensive discovery in technical medical and healthcare issues, including

depositions of experts throughout the United States and in England on the substantive legal issues involved

in the litigation, as well as extensive document discovery and complex case management.

Mr. Annand joined CMHT in March, 2000.  His substantial litigation experience enhances the

ability of CMHT to proceed aggressively with all aspects of litigation in the mass tort, products liability,

and personal injury cases in which the firm is involved, including case development, management and

discovery, as well as in the courtroom for hearings and trials.


MARC I. MACHIZ


Marc Machiz is a partner at Cohen, Milstein, Hausfeld & Toll, P.L.L.C.  Mr. Machiz received his

law degree from the University of California at Berkeley (Boalt Hall) in 1978.  He joined the Plan Benefits

Security Division ("PBS") of the Office of the Solicitor of Labor as a trial attorney in 1978, and was

appointed Assistant Counsel for Fiduciary Litigation in 1982.  At the start of 1984, he joined Beins,

Axelrod and Osborne, P.C. as an associate practicing general labor and Employee Retirement Income Security Act ("ERISA") law on behalf of unions and multi employer plans.  In 1986 he returned to the Department of Labor as Counsel for General Litigation at PBS, and from 1988 to 2000 held the position of Associate Solicitor, heading the Division.  As Associate Solicitor, Mr. Machiz was the Department of Labor's chief ERISA lawyer with responsibility for all enforcement litigation brought by the Secretary of Labor under the statute, which governs the vast majority of privately sponsored health, welfare and pension plans.  He was also responsible for all legal advice under the statute provided to the Pension & Welfare Benefits Administration which administers Title I of ERISA.

Mr. Machiz is well-known for instituting the Department's innovative amicus program which aggressively advocated the Department's views throughout the judicial system on a wide range of ERISA issues ranging from the need to limit ERISA preemption of state worker and consumer protection laws, to the need to strengthen participants' rights and remedies under the Act.

Since joining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. in March of 2000, Mr. Machiz has been litigating ERISA class actions involving subject matter including inappropriate pension plan investments, the inappropriate investment in company stock by 401k plans and illegal plan terminations.  *E.g., Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002); *Mehling, et al. v. New York Life Insurance Co., et al.,* No. 99-CV-5417 (E.D. Pa.) (alleging inappropriate pension and 401k plan investments); *In re Williams Company ERISA Litigation* No. 02-CV-l53-H (N.D. Okla.) (alleging breach of fiduciary duty regarding 401k plan investment in company stock); *Constance K. Schied v. Dynegy, Inc.*, No. H-02-3076 (S.D. Tex.) (alleging breach of fiduciary duty regarding 401k plan investment in company stock).

Mr. Machiz's expertise in ERISA has been recognized by his colleagues in the ERISA bar who made him Charter Fellow of the American College of Employee Benefits Counsel.  Mr. Machiz is a

frequent speaker on ERISA issues for, among others, the ABA, ALI-ABA, Glasser Legal Works, Mealy's and PLI, and has served as plaintiffs' co-chair of subcommittees of the Employees Benefits Committee of the ABA's Labor Section.


## PAUL T. GALLAGHER

Paul Gallagher's practice concentrates on complex litigation involving antitrust violations, international commercial violations, and human rights abuses. In the antitrust area, his cases have involved the successful prosecution of litigation against manufacturers of explosives for price-fixing, which resulted in a $70 million settlement; the ongoing prosecution of litigation against Archer Daniels Midland and other manufacturers of high fructose corn syrup for alleged price-fixing; abuse of monopoly claims against United States Tobacco Company and price-fixing claims against Mercedes-Benz and 24 New York region dealers.

In the last several years, Mr. Gallagher has developed an expertise in issues involving international antitrust litigation. He played a major part in the International Auction Houses price-fixing litigation, which recently settled for $40 million. The International Auction Houses Litigation is the first time that a class, comprised solely of non-U.S. citizens, has ever obtained compensation under the U.S. antitrust laws. He also argued and obtained a favorable D.C. Circuit Court of Appeals decision in the International Vitamins Litigation, which has had a significant impact on antitrust jurisprudence and was characterized by one prominent academician as "one of the most expansive antitrust decisions of the last 30 years."

In the human rights area, Mr. Gallagher played a prominent role in the historic litigation against the major Swiss banks for withholding assets deposited by persecutees fleeing the Nazis prior to and during the

Second World War, which was settled for $1.25 billion.  He also played an active role in the litigation and resolution of claims against the German government and German industry for, among other claims, the use of persecuted persons to perform slave labor during the War.  That case resulted in a settlement of over $5.2 billion.  Mr. Gallagher was honored by the Government of Poland for his significant contributions to this historic effort.  He also successfully prosecuted human rights litigation against the French banks for their collaborative role with the Nazi Regime, which resulted in multi-million dollar settlements.

Mr. Gallagher graduated from the Marshall-Wythe School of Law of the College of William & Mary in 1992.  He was a member of the William & Mary Law Review, as well as the Law Review of the University of Cincinnati School of Law, where he attended the first year of law school, ranked first in his class, and received several American Jurisprudence Awards for academic excellence.

Mr. Gallagher is admitted to practice in Washington, D.C., Virginia and numerous federal district and circuit courts across the United States.

<u>LINDA P. NUSSBAUM</u>

Linda P. Nussbaum joined CMHT as the resident partner of the New York City office in March, 2001, and is a member of the Antitrust Practice Group.  She has had extensive experience practicing in the areas of complex litigation and class actions, with an emphasis in antitrust, securities and employment litigation.

Ms. Nussbaum received her undergraduate degree *magna cum laude* from Brooklyn College of the City University of New York in 1974, where she was a member of Phi Beta Kappa.  She received her law degree from the National Law Center, George Washington University, where she graduated *with honors* in 1977.  She received an LL.M. degree in Taxation from the New York University School of Law in 1984.

Ms. Nussbaum is a member of the American Law Institute.

Ms. Nussbaum is presently lead or co-lead counsel in a number of significant class actions pending throughout the U.S., including *In re Remeron Direct Purchaser Antitrust Litigation*, Master No. 03-CV-0085 (FSH) (D.N.J.); *In re Relafen® Antitrust Litigation*, No. 01-12239 (WGY) (D. Mass.); *In re Microcrystalline Cellulose Antitrust Litigation*, MDL Docket No. 1402; and *In re K-Dur Antitrust Litigation*, MDL Docket No. 1419.

She has recently served as a co-lead counsel in a number of antitrust class actions that have resolved very favorably for the plaintiff class including *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (D.D.C.), where in approving the settlement Chief Judge Hogan said, "Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country."; *In re Methionine Antitrust Litigation*, MDL No. 1311 (N.D. Cal.); and on the executive committee of *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal.).

Ms. Nussbaum has been admitted to practice in New York and the District of Columbia.

## STEWART M. WELTMAN

Stewart M. Weltman joined Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as a partner in the Antitrust Practice Group in December 2002.  Prior to joining CMHT, Mr. Weltman had distinguished himself as a complex litigator in Chicago, Illinois, first as a partner with Much, Shelist, Freed, et al., and over the last decade as the managing partner and owner of Stewart M. Weltman P.C.  During his over 24 years of practicing as a complex litigator, Mr. Weltman has had the opportunity to represent both individual plaintiffs, plaintiff classes and defendants in antitrust, securities fraud, consumer fraud, and accounting